UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Anthony Lamar Wright, #250258, *aka Anthony L. Wright,* | ) C/A No. 4:10-2444-TLW-TER ) ) |
| Plaintiff, | ) ) |
| vs. | ) REPORT AND RECOMMENDATION ) |
| Joanne Conley, in her individual capacity; Debra Brabham, in her individual capacity; Warden Mackie, in his individual capacity; Dr. Moore, in his individual capacity; Chuck Frazier, in his individual capacity, | ) ) ) ) ) ) |
| Defendants. | ) ) |

## I. PROCEDURAL BACKGROUND

The Plaintiff, Anthony Lamar Wright ("Plaintiff/Wright"), filed this action under 42 U.S.C. § 1983[1] on September 21, 2010. Plaintiff alleges that his constitutional rights were violated by Defendants. Defendants filed a motion for summary judgment on October 31, 2011. Because Plaintiff is proceeding pro se, the court issued an order on or about November 1, 2011, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the Defendants' motion for summary judgment and the possible consequences if he failed to respond adequately. Plaintiff failed to file a response. Therefore, a report and recommendation was entered on December 13, 2011, recommending the case be dismissed for failure to prosecute under Rule 41b of the Federal Rules

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

of Civil Procedure. (Doc. #52). On December 19, 2011, Plaintiff filed a response in opposition for summary judgment. (Doc. #54). On December 27, 2011, Plaintiff filed an objection to the report and recommendation. (Doc. #56). Therefore, the district judge remanded the case back to the undersigned for a report and recommendation on the pending motion for summary judgment. On April 24, 2012, Plaintiff filed an additional document entitled "Objection to Defendant's Motion for Summary Judgment." (Doc. #72).

At all times relevant to the allegations in the Plaintiff's complaint, he was an inmate in the custody of the South Carolina Department of Corrections. However, it appears he is no longer an inmate based on his notice of change of address filed with the court on May 9, 2011.

## II. DISCUSSION

### A. STANDARD FOR SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to

judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324 (Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves). Rather, the party must present evidence supporting his or her position through "depositions, answers to interrogatories, and admissions on file, together with . . . affidavits, if any." Id. at 322; see also Cray Communications, Inc. v. Novatel Computer

Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

### B. ARGUMENT OF PARTIES/ANALYSIS

The Plaintiff alleges he was denied proper medical attention while incarcerated and that he suffers from multiple sclerosis. Plaintiff asserts that while at the Colleton County Detention Center he received the medication Nueurontin but alleges Defendants Conley and Brabham failed to give him the medication Betaseron. Plaintiff further alleges that Chuck Frasier allowed the nurses to refuse him the treatment that he requested and that Warden Bernard Mckie at the Kirkland Correctional Institution (KCI) refused to permit him to follow a vegetarian diet that was essential to his health and religion as a Rastafarian. In his complaint, Plaintiff asserts that he exhausted all available solutions to his problems. In the memorandum in support of summary judgment, Defendants assert Plaintiff failed to exhaust his administrative remedies. In the response filed by Plaintiff on April 24, 2012, Plaintiff states that he is in possession of numerous "Request to Staff Members" and several "SCDC Step 1 grievance forms." Plaintiff submitted with his complaint a form for "Request to Staff Member" and a "Step I grievance form;" however, this does not suffice to exhaust his administrative remedies.

### C. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants have pleaded the affirmative defense of failure to comply with the PLRA's exhaustion requirement and have moved for summary judgment on that basis as well as on the merits of the allegations. Defendants assert Plaintiff did not file a Step 2 appeal of the Warden's decision.

Defendants submitted the affidavit of Angela Hardin, Inmate grievance Administrator for SCDC, who confirms Plaintiff failed to completely exhaust his administrative remedies. Defendants argue Plaintiff failed to complete the grievance procedures and remedies available to him. Defendants assert Plaintiff failed to complete Step 1 and never attempted Step 2 of the steps required under the grievance procedures.

Angela Hardin attests that she is employed by the SCDC and currently serves as an Inmate Grievance Administrator. (Hardin affidavit, Doc. #47-2). Hardin attests that the SCDC has an Inmate Grievance System through which inmates may seek review of complaints and classification appeals, policies, procedures, directives or conditions which directly affect an inmate. (Id.). Inmates must first attempt to informally resolve the issue by bringing it to the attention of the security staff by either submitting a request to staff member or by discussing their complaint with the appropriate supervisor. (Id.). If an informal resolution is unsuccessful, the inmate must complete a Step 1 grievance form and submit it to the designee assigned by the warden. (Id.). The Inmate Grievance Coordinator is required to conduct a complete investigation and make recommendations to the warden concerning disposition of the grievance. (Id.). The warden reviews the investigation and recommendation made by the IGC and then his response is printed on the Step 1 form. (Id.). The IGC then returns the form to the inmate, explains the warden's decision, and allows the inmate to either accept or reject the warden's decision. (Id.). If the inmate remains unsatisfied, the IGC gives the inmate a Step 2 grievance form to complete. (Id.). The Inmate Grievance Policy requires that all Step 2 grievances be sent to the SCDC Columbia office, Grievance Branch, for independent review and investigation. Once the independent investigation and review by the Grievance Branch are complete, a decision is rendered by the responsible official, printed on the Step 2 form, and sent

back to the correctional institution for service upon the inmate. (Id.). If the inmate still is unsatisfied after Step 2, the IGC supplies a blank form on which the inmate may utilize the final administrative remedy available, which is reviewed by the South Carolina Administrative Law Court. Inmate records are kept electronically, and Hardin attests that she reviewed the electronic record for Plaintiff's SCDC grievances submitted in connection with this issue. (Id.).

Hardin attests that Plaintiff submitted a Step 1 Grievance No. KCI-1316-10, which was returned to him unprocessed or around July 26, 2010, due to the informal resolution attempted. The inmate was told to refile another grievance within five days with all corrections made on the new grievance. (Id.). Plaintiff was transferred from KCI to Lee Correctional Institution (LCI) on July 14, 2010, so the unprocessed grievance had to be mailed to him and his 5 days began when it was received at LCI. (Id.). Plaintiff resubmitted his complaints in Grievance LEECI-2227-10 which was received on August 6, 2010, and returned unprocessed on or around August 9, 2010, due to insufficient informal resolutions. Plaintiff was instructed he had 5 days to refile a new grievance on this issue with corrections. (Id.). Plaintiff refiled the grievance and it was designated as LEECI-2267-10, but it was also returned on or around August 12, 2010, as unprocessed for failing to follow directions on how to properly refile. (Id.). Plaintiff did not file anything more with regard to this issue. (Id.). Thus, Hardin attests that Plaintiff failed to exhaust his administrative remedies regarding the claims asserted in this lawsuit. (Id.).

Plaintiff filed a response in opposition to the motion for summary judgment but did not address the issue of exhaustion. In Plaintiff's complaint, he stated that he filed a grievance in relation to the issues raised in this action and cited LEECI 2267-10 as the grievance number. Plaintiff stated that he filed the grievance on August 10, 2010, and received a final agency determination on August

6

10, 2010. (Complaint, p. 2). Plaintiff attached a copy of several forms for informal request of staff member and copies of two Step 1 grievance forms. The first grievance form submitted by Plaintiff was dated July 26, 2010, with grievance no.: KCI-1316-10. The second copy of a Step One grievance form was dated August 9, 2010, with the grievance number listed as LEECI 2227-10.

Plaintiff attached to his complaint a Step One grievance form dated July 26, 2010, and designated as KCI-1316-10 which involved Plaintiff's allegations that he was being subjected to cruel and unusual punishment due to "my medication having been denied over a month and by my worsening health is being neglected." (Doc. # 1-1). In the Step 1 form designated as Grievance No.: KCI-1316-10, the Plaintiff alleged he was subjected to cruel and unusual punishment due to "my medication having been denied over a month and my worsening health is being neglected." (Doc. #1-1). The action taken by the IGC to this grievance stated:

> Returned unprocessed; Per GA-01:12, "Inmate Grievance System," you must attempt and informal resolution with the appropriate supervisor/staff. You have failed to show how you attempted this action. It is suggested you contact, R & E Health Care Authority and give him/her the opportunity to address your concerns prior to filing a grievance. You have five days to return this grievance with a properly completed grievance. Due 7/31/10.

(Doc. #1-1).

Plaintiff submitted a second copy of a Step 1 Grievance form identified as Grievance No.: LEECI227-10. In this grievance form, Plaintiff stated that he has a constitutional right to his medical needs and "[M]y right is being denied. I am not receiving any MS treatment and my health is suffering." (Doc. #1-1). The IGC responded that the grievance was being returned unprocessed because the attempt an informal resolution was insufficient, the grievance was vague, and he did not state when or who denied him medical. Plaintiff was informed that he had five days to correct and

7

resubmit the grievance and that it must be received by August 14, 2010, or the issue would be closed. (Id.).

The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of his confinement. 42 U.S.C. 1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the grievance process within the SCDC. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741 (2001); *see* Porter v. Nussle, 534 U.S. 516 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir. 2001)(exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3d 718 (7th Cir. 2001)(exhaustion required even though Plaintiff claimed he was afraid); *see also* Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001)(unpublished opinion)(applying Booth v. Churner to affirm district court's denial of relief to Plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including §1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386 (2006).

Based on the evidence presented, it is recommended that Defendants' motion for summary judgment (doc. #47) be granted for failure to exhaust administrative remedies. As it is recommended that the complaint be dismissed for failure to exhaust the administrative remedies, the merits will not be addressed.

### III.  CONCLUSION

Based on the above reasoning, it is RECOMMENDED that Defendants' motion for summary judgment (document #47) be GRANTED and this case dismissed.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

May 31, 2012
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**